IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHY RICHBURG, ADRIANA GAMBOA, JEFFREY KOENIG, and CINDY MCGLONE, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 22 CV 2420 |
| v. | ) Judge Robert W. Gettleman |
| CONAGRA BRANDS, INC., | ) |
| Defendant. | ) |
| JULIE RUIZ, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. 22 CV 2421 |
| v. | ) Judge Robert W. Gettleman |
| CONAGRA BRANDS, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION & ORDER**

Before this court are motions from two related cases: Richburg v. Conagra Brands, Inc., 22 CV 2420 ("Richburg"), and Ruiz v. Conagra Brands, Inc., 22 CV 2421 ("Ruiz"). In Richburg, plaintiffs Kathy Richburg, Adriana Gamboa, Jeffrey Koenig, and Cindy McGlone (collectively, "the Richburg plaintiffs"), individually and on behalf of all others similarly situated, bring a ten-count class action complaint against defendant Conagra Brands, Inc. ("Conagra" or "defendant").[1] The Richburg plaintiffs allege that defendant falsely and misleadingly marketed and labeled its Orville Redenbacher's® microwave popcorn products

---

[1] Plaintiffs' class action complaint includes ten counts, although "Count X" is missing and plaintiffs including a Count XI.

1

("Redenbacher products"), and bring individual and class claims under consumer fraud and deceptive trade practice statutes in Illinois (Counts I and II), California (Counts III, IV, and V), New York (Counts VI and VII), Florida (Count VIII), in addition to a multi-state consumer protection class (Count IX) and nationwide class (Count XI).[2]

In Ruiz, plaintiff Julie Ruiz ("Ruiz"), individually and on behalf of all others similarly situated, brings a five-count class action complaint against defendant. Ruiz alleges that defendant falsely and misleadingly marketed and labeled its Angie's BOOMCHICKAPOP® microwave popcorn products ("BOOMCHICKAPOP products") and brings individual and class claims under California consumer fraud and deceptive trade practice statutes (Counts I, II, and III), in addition to a multi-state consumer protection class (Count IV) and nationwide class (Count V).[3]

In both Richburg and Ruiz, defendant moves to dismiss all counts of each complaint (Doc. 19, 22 CV 2420; Doc. 17, 22 CV 2421), in addition to requesting judicial notice of the Food & Drug Administration's document entitled "Authorized Uses of PFAS in Food Contact Applications" in each case (Doc. 21, 22 CV 2420; Doc. 19, 22 CV 2421). For the reasons explained below, the court grants defendant's requests for judicial notice (Doc. 21, 22 CV 2420; Doc. 19, 22 CV 2421). The court also grants defendant's motions to dismiss all counts of both complaints (Doc. 19, 22 CV 2420; Doc. 17, 22 CV 2421).

## BACKGROUND

The factual backgrounds of Richburg and Ruiz are very similar, so the court outlines

---

[2] The proposed multi-state consumer protection class in Richburg includes individuals in California, Florida, Illinois, New York, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, Washington, "or any state with similar laws."

[3] The proposed multi-state consumer protection class in Ruiz also includes consumers in California, Florida, Illinois, New York, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, Washington, or "any state with similar laws."

2

them together. Defendant is a prominent packaged food manufacturer that produces a variety of well-known food products, including microwave popcorn. Consumers prepare microwave popcorn by heating a specially designed bag containing unpopped popcorn kernels and additives. When consumers place the bag in the microwave, the heat pops the kernels.

The Richburg plaintiffs and Ruiz (collectively, "plaintiffs") claim that microwave popcorn creates a "unique risk" of exposure to per- and polyfluoroalkyl substances ("PFAS") because PFAS are used in food contact materials like microwave popping bags. According to plaintiffs, PFAS are "a category of human-made chemicals with a toxic, persistent, bioaccumulative nature which are associated with numerous health concerns." Plaintiffs explain that manufacturers use PFAS to treat food contact materials, such as wrappers and packaging, because it increases their water and grease resistance, in addition to enhancing their non-stick properties. They cite studies that "have confirmed that PFAS [in food contact materials] migrates to food, where it is then ingested by consumers."

Defendant requests that the court take judicial notice of the Food & Drug Administration's ("FDA") document entitled, "Authorized Uses of PFAS in Food Contact Applications," which is available at https://www.fda.gov/food/chemical-contaminants-food/authorized-uses-pfas-food-contact-applications. This document states that "the FDA has authorized specific PFAS for use in specific food contact applications," expressly including microwave popcorn bags. The document states that the FDA "conducts a rigorous scientific review before they are authorized for the market," which includes data on migration of the food contact substance "from its intended use and other sources of dietary exposure." Moreover, food contact substances are generally regulated by the FDA as food additives due to "their potential to migrate into food." According to the document, in paper and paperboard packaging, small PFAS

3

"sidechains" can detach from non-PFAS polymers in the packaging, resulting in the potential for PFAS migration to food.

Plaintiffs base the factual conclusions in their complaints on independent third-party testing of the microwave popping bags used in the Redenbacher and BOOMCHICKAPOP products. According to plaintiffs, such testing was conducted "in accordance with accepted industry standards for detecting whether the Products contain organic fluorine," which they claim is "a widely-accepted method of determining whether a sample contains PFAS." Plaintiffs claim that defendant's products contain a "significant level of PFAS," because the testing detected the presence of organic fluorine in the microwave popping bags. Plaintiffs did not submit the actual products that they purchased for testing. Rather, the Richburg plaintiffs allege that all Redenbacher utilize a substantially similar microwave popping bag, and Ruiz makes the same allegation for defendant's BOOMCHICKAPOP products.[4]

In addition, plaintiffs claim that defendant intentionally utilizes the marketing on its microwave popcorn products to drive sales and increase profits from health-conscious consumers. They allege that defendant's marketing and labeling strategies are deceitful because defendant utilizes misleading representations to aggressively and strategically "convince consumers that the Products are free of unnatural or artificial ingredients." According to the Richburg plaintiffs, for example, defendant labels its Redenbacher products as containing "only real ingredients" and "100% ingredients from natural sources," when instead they allegedly contain harmful PFAS levels. Similarly, according to Ruiz, defendant labels its BOOMCHICKAPOP products as containing "only real ingredients," "ingredients sourced from

---

[4] Plaintiffs do not allege that the Redenbacher popping bags are substantially similar to the BOOMCHICKAPOP bags. Rather, comparing the complaints, plaintiffs allege different levels of organic fluorine in the Redenbacher and BOOMCHICKAPOP bags. What plaintiffs allege is substantially similar bags within each brand.

nature," and "Real, Simple Ingredients. Nothing Fake."

Plaintiffs bring the instant suits to "halt [defendant]'s dissemination of false and misleading representations and to correct the false and misleading perception that [defendant]'s representations have created in the minds of reasonable consumers." Plaintiffs claim that they, and the putative class members, were harmed when they purchased defendant's Redenbacher and BOOMCHICKAPOP products due to defendant's material representations (i.e., that defendant's products are made with only "natural" and "real" ingredients) and omissions (i.e., that defendant's products are packaged in bags containing significant levels of migrating PFAS).

Plaintiffs complain about the disclosures on defendant's packaging and the price and corresponding value of the Redenbacher and BOOMCHICKAPOP products. They allege that they, and other reasonable consumers, would not have purchased, or would have paid less for, the products if defendant had disclosed the alleged presence of PFAS "when following [defendant's] cooking instructions." Moreover, they allege that they "did not obtain the full value of the advertised Products" because they "paid a price premium for empty promises." Plaintiffs indicate that they would consider buying the products in the future if defendant "takes corrective action."

## DISCUSSION

The court begins by taking judicial notice of the FDA document entitled, "Authorized Uses of PFAS in Food Contact Applications." A court can take judicial notice of "matters of public record" on a motion to dismiss without converting that motion into a motion for summary judgment. See Doss v. Clearwater Title Co., 551 F.3d 634, 640 (7th Cir. 2008). The Federal Rules of Evidence allow judicial notice when an adjudicative fact is not subject to reasonable dispute and "can be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned." Fed. R. Evid. 201(b)(2). "Courts routinely take judicial notice of the information on official government websites," such as the FDA document in the instant cases, because they are not subject to reasonable dispute. See, e.g., Denius v. Dunlap, 330 F.3d 919, 926–27 (7th Cir. 2003).

Next, the court evaluates defendant's motions to dismiss all counts of the complaints. Defendant argues that the court should dismiss the complaints for various reasons: (1) plaintiffs lack standing under Article III of the U.S. Constitution; (2) plaintiffs have not plausibly alleged the presence of PFAS in the products; (3) the challenged statements and omissions cannot mislead a reasonable consumer; (4) plaintiffs' claims are expressly preempted; and (5) other miscellaneous reasons.

The court starts by evaluating defendant's argument in both motions that plaintiffs lack standing to bring their claims under Article III, which limits the court's judicial power. As a threshold requirement, the parties seeking federal jurisdiction must establish that they have standing to do so. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 562 (1992). To have standing, a plaintiff must have suffered an injury in fact that is traceable to the defendant's challenged conduct and redressable by a favorable decision from the court. See id. at 560–61. An injury in fact is an invasion of a legally protected interest that is concrete and particularized, and actual or imminent. Id. at 560.

Defendant facially challenges plaintiffs' standing based on the allegations in the complaints. When considering a facial challenge to standing, courts apply the same standard as reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6). See Geske v. PNY Techs., Inc., 503 F. Supp. 3d 687, 695 (N.D. Ill. 2020). Consequently, the court accepts all well-pled factual allegations as true and construes the complaints in the light most favorable to

6

plaintiffs. Id.

Plaintiffs have multiple standing obligations in the instant cases. They must establish standing to bring their individual claims, based on the products that they themselves purchased. They must establish standing to bring their claims on behalf of the putative class members, which is a separate obligation that is distinct from class certification under Federal Rule of Civil Procedure 23. Fed. R. Civ. Pro. 23. Last, they must establish standing for each type of relief that they seek, including both monetary and injunctive relief. See Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).

Defendant argues that plaintiffs do not have standing to bring their individual claims in federal court because they have not alleged concrete or particularized economic harms under either the benefit-of-the-bargain or price premium theories. The court emphasizes that plaintiffs do not allege physical injuries stemming from the alleged presence of PFAS in the Redenbacher and BOOMCHICKAPOP products that they purchased; rather, they allege economic injuries based on the money that they spent on the products. As discussed above, plaintiffs claim that they would not have purchased the Redenbacher or BOOMCHICKAPOP products, or would have paid less for them, if defendant had disclosed the alleged presence of PFAS when following defendant's cooking instructions. Plaintiffs claim related, but distinct, injuries by claiming that they did not obtain the full value of the products as advertised because they "paid a price premium for empty promises."

According to defendant, plaintiffs have not alleged concrete injuries because they have not alleged that they purchased products that were "actually worth less than what they paid for [them]." Defendant cites In re Johnson & Johnson Talcum Powder, 903 F.3d 278, 287 (3d Cir. 2018), to support its argument. In Johnson & Johnson, the court determined that the plaintiff

7

could not establish a concrete economic injury where she received a functioning product that she consumed without incident, and where she asserted that the product is worth less (or worthless) because of the presence of dangerous chemicals in the product, but failed to adequately allege that the chemicals posed a substantial and credible risk of future physical harm. Id. at 290. The court in Johnson & Johnson held that the plaintiff failed to establish an economic injury based on her purchase of "unsafe" talcum powder containing asbestos because she did not allege that the product was worth less than the price paid, given that the powder "worked" as intended and did not give her cancer, or otherwise increase her risk of cancer, according to her allegations. Id.

Johnson & Johnson is not binding upon this court, but its reasoning is instructive and persuasive. In the instant cases, plaintiffs do not allege that defendant's microwave products failed to work as intended—for example, the complaints do not contain any indication that the microwave popcorn products at issue did not pop correctly, or that plaintiffs were otherwise unable to consume the popcorn. Without such an allegation, the court is not persuaded that plaintiffs have established concrete injuries based on the benefit-of-the-bargain theory. As defendant argues, plaintiffs purchased popcorn and they received popcorn; they have offered only conclusory allegations to suggest that the products had diminished value. Thus, the court does not need to evaluate whether plaintiffs have plausibly alleged that the products contained PFAS.

Whether plaintiffs have established standing under the price-premium theory is a separate issue. Defendant argues that the Richburg plaintiffs provide only "threadbare" allegations that they paid a "premium" for defendant's Redenbacher products because the products' packaging indicated that they were made with "only real ingredients" and "100% ingredients from natural sources." Similarly, defendant argues that Ruiz provides only "threadbare" allegations that she

8

paid a premium for defendant's BOOMCHICKAPOP products because they were made with "only real ingredients," "ingredients sourced from nature," and "Real, Simple Ingredients. Nothing Fake." According to defendant, in either complaint, "[t]here is nary a factual allegation in sight suggesting Plaintiffs actually paid any premium or elevated price." The court disagrees. Taking the facts in the light most favorable to plaintiffs, plaintiffs allege that they relied upon certain representations on defendant's packaging and paid more than they otherwise would have for a product that contained a risk of PFAS contamination. See, e.g., In re Aqua Dots Prods. Liab. Litig., 654 F.3d 748, 751 (7th Cir. 2011). In other words, plaintiffs allege injuries based on the difference between the price they paid for the products as they believed them to be (with only real and natural ingredients) compared to the products as plaintiffs allege that they are (with significant levels of unnatural PFAS).

The court next evaluates whether plaintiffs have alleged their concrete economic harms in a particularized manner. For an injury to be "particularized," it must affect the plaintiff in a personal and individual way. See Spokeo v. Robins, 578 U.S. 330, 340 (2016). According to defendant, plaintiffs' injuries are not particularized because they have not alleged that the laboratory tested the actual products that they purchased, rather than Redenbacher and BOOMCHICKAPOP products generally. Relatedly, defendant argues that plaintiffs' allegations of harm are "highly speculative" because it is merely "possible" that the presence of organic fluorine in the popcorn bags suggests the presence of PFAS in the popcorn, and that the PFAS allegedly present in the popcorn is the type of PFAS that may cause adverse health effects at certain levels.

The court agrees with plaintiffs that they have alleged particularized and non-speculative injuries based on economic harm. At this stage, it is irrelevant whether plaintiffs can prove with

certainty that the products that they themselves purchased contained significant levels of PFAS, whether in the microwave popping bags or in the popcorn itself. To establish standing, it is enough that plaintiffs have plausibly alleged that all Redenbacher popping bags, as well as all BOOMCHICKAPOP popping bags, were substantially similar, that the popping bags generally contained PFAS, and that plaintiffs paid an elevated price for the products based on defendant's representations on the products' packaging, which suggested no risk of PFAS migration. It is important to remember that plaintiffs' injuries are not based on alleged adverse health outcomes—they are alleging economic harm based on defendants' conduct. Accordingly, at this stage, plaintiffs have established standing for their economic injuries because they seek monetary damages based on the alleged premium that they themselves paid for defendant's Redenbacher and BOOMCHICKAPOP products based on the information on the packaging.

Plaintiffs' ability to establish standing for their individual harms, however, is distinct from their ability to establish standing for harm to the respective putative classes, as well as harm to the public at large. Plaintiffs do not establish standing for injunctive relief for their individual claims, putative class claims, or claims on behalf of the public. An allegation of future injury must be "certainly impending" to confer standing. See Whitmore v. Arkansas, 495 U.S. 149, 158 (1990). While plaintiffs allege that they would "consider" purchasing defendant's products in the future, they indicate only that they would purchase the products again if defendant "t[ook] corrective action." This allegation presupposes injunctive relief, rather than compelling it. Because plaintiffs lack standing to seek injunctive relief for their individual harms, they cannot seek injunctive relief for the putative classes or the public.

Whether plaintiffs have standing to pursue their claims for monetary damage on behalf of the putative multi-state classes is a more difficult question, and courts in this district have ruled

both ways on this issue. According to defendant, the Richburg plaintiffs lack standing to bring claims under the laws of states where they did not reside or purchase products, which includes every state in the putative class except Illinois, Indiana, California, New York, and Florida. In Ruiz, defendant argues that Ruiz lacks standing to bring claims under the laws of any state except California. Defendant emphasizes that the court does not need to wait until class certification to decide this issue, citing In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig., No. 09-cr-3690, 2013 WL 4506000, at *6–8 (N.D. Ill. Aug. 23, 2013). Plaintiffs counter that this issue is premature. See Carrol v. S.C. Johnsons & Son, Inc., No. 17-CV-05828, 2018 WL 1695421, at *5 (N.D. Ill. Mar. 29, 2018). The court agrees with defendant that plaintiffs have not established standing for the nationwide classes because they have not alleged an injury in fact in those jurisdictions.

Thus, the state of defendant's motions to dismiss is the following: in both Richburg and Ruiz, plaintiffs have established standing for their alleged economic harm based on the premium-price theory, but only for monetary damages, not injunctive relief. At this stage, plaintiffs have sufficiently established standing on behalf of the putative classes for monetary damages, but they are unable to establish standing for injunctive relief on behalf of the putative classes or the public. Plaintiffs have not established standing for putative class members in states where they did not reside or purchase the product. The court now evaluates whether plaintiffs' claims plausibly state a claim for relief under the reasonable consumer standard.

"To survive a motion to dismiss [for failure to state a claim], a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the

11

defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

According to defendant, the court should dismiss the complaints because plaintiffs have not plausibly alleged the presence of PFAS in defendant's products, which defendant characterizes as a "necessary factual predicate" to plaintiffs' allegations under state law. Defendant argues that plaintiffs' allegations regarding the third-party laboratory testing of the products "are too conclusory and insufficiently detailed to be given any credit." Defendant attacks contextual details about the tests, such as the fact that the laboratory tested the microwave popcorn bags, rather than the popcorn itself, for organic fluorine, rather than PFAS.

The court rejects defendant's arguments at this stage. The court agrees with plaintiffs that their allegations regarding testing methodology and analytics would be proper subjects for discovery, and defendant's arguments require the court to inappropriately "delve into the merits of this action." Cosmetique, Inc. v. ValueClick, Inc., 753 F. Supp. 2d 716, 722 (N.D. Ill. 2010). As plaintiffs note, defendant does not argue that PFAS are "real" or "natural"; instead, defendant acknowledges that PFAS are artificial. The real dispute is whether the alleged presence of migratory PFAS in the Redenbacher and BOOMCHICKAPOP products makes PFAS an "ingredient." For the purposes of the instant motion, the court accepts plaintiffs' allegation that the industry considers organic fluorine to be a surrogate for PFAS, and the type of PFAS allegedly present in the products is irrelevant.[5]

---

[5] In any case, the judicially noticed FDA document may answer defendant's question regarding the type of PFAS at issue, where it indicates that in paper and paperboard packaging, small PFAS "sidechains" result in the "potential" for PFAS migration to food.

12

Defendant's primary argument is that the challenged statements and omissions on defendant's packaging would not mislead a reasonable consumer, even if the Redenbacher and BOOMCHICKAPOP products contain migratory PFAS. First, plaintiffs challenge what they view as defendant's omitted disclosures that the products contain PFAS chemicals. Second, plaintiffs challenge defendant's statements on the products' packaging, which indicate that the products contain "only real ingredients" and "100% ingredients from natural sources." Moreover, defendant states that the BOOMCHICKAPOP products contain "Real, Simple Ingredients. Nothing Fake." Plaintiffs complain that these statements are deceptive to reasonable consumers because they suggest that the products do not contain PFAS, whereas plaintiffs allege that they do.

The court agrees with defendant that plaintiffs have not plausibly alleged that reasonable consumers would be deceived by defendant's representations or omissions on the Redenbacher or BOOMCHICKAPOP products. As a matter of law, plaintiffs have not plausibly alleged that reasonable consumers would be deceived by defendant's packaging. A practice is deceptive "if it creates a likelihood of deception or has the capacity to deceive." Bober v. Glaxo Wellcome PLC, 246 F.3d 934, 938 (7th Cir. 2001). Courts apply a "reasonable consumer" standard to examine the likelihood of deception. See Benson v. Fannie May Confections Brands, Inc., 944 F.3d 639, 646 (7th Cir. 2019). This standard requires a probability that a significant portion of the general consuming public or targeted consumers, acting reasonably under the circumstances, could be misled. See Bell v. Publix Super Markets, Inc., 982 F.3d 468, 474–75 (7th Cir. 2020). Relevant circumstances include "all the information available to consumers and the context in which that information is provided and used." Id. at 477. "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising,

13

dismissal on the pleadings may well be justified." Id.

According to defendant, reasonable consumers understand "ingredients" to be those items listed in the ingredient list that is mandated by the FDA pursuant to the Food, Drug, and Cosmetic Act ("the FDCA"). The FDCA mandates that food products with more than one component display an "ingredient" list on their packaging. See 21 U.S.C.A. § 343(i); 21 C.F.R. § 101.4. The FDA, however, exempts "[s]ubstances migrating to food from equipment or packaging" from compliance with this regulation, meaning that they do not need to be included in the ingredient list. See 21 C.F.R. § 101.100(a)(3)(iii). Defendants argue that reasonable consumers would not consider PFAS to be an ingredient because the FDA regulates PFAS "differently from traditional food ingredients." Plaintiffs counter that they should be allowed to present evidence on how consumers understand these labels, especially given the "fact intensive nature" of these cases, which involve multiple steps in logic.

The court agrees with defendant and grants defendant's motion to dismiss all counts of both complaints. Assuming as true that the microwave popping bags contain PFAS, that such PFAS migrates into the popcorn, and that the popcorn subsequently contains non-incidental, harmful PFAS levels, the question is whether reasonable consumers would consider such undisputedly artificial, migratory chemicals to be an "ingredient" in the challenged food products based on the packages' representation that the products contain "only real ingredients" and "100% ingredients from natural sources." (Emphasis added). The court concludes that such an interpretation is implausible in light of the FDA's exemption of migratory substances from the mandated list of "ingredients" on food product packaging. Put another way, the representation on the packaging is correct as a matter of law. Thus, the court does not need to evaluate whether plaintiffs' claims are preempted by federal statute. Moreover, because plaintiffs do not allege

14

independent theories of unjust enrichment, the court also dismisses plaintiffs' unjust enrichment claims because it dismisses all other claims in both complaints.

## CONCLUSION

For the reasons stated above, the court grants defendant's requests for judicial notice Doc. 21, 22 CV 2420; Doc. 19, 22 CV 2421) and grants defendant's motions to dismiss both complaints (Doc. 19, 22 CV 2420; Doc. 17, 22 CV 2421), with prejudice.

**ENTER:**

_____
**Robert W. Gettleman**
**United States District Judge**

**DATE:  February 8, 2023**